We'll hear argument next in Case 11-1085, Amgen, Inc., v. Connecticut Retirement Plans and Trust Funds. Mr. Waxman. Mr. Chief Justice, and may it please the Court, our case is about whether the claim of liability is, in a fundamental sense, class-wide or individual. The heart of a 10b-5 claim is, I bought or sold in reliance on a misleading statement. The question at the class search stage is whether each individual will have to prove his own reliance directly on the statement or whether he can prove indirectly reliance on the statement by showing that everybody relied on a distorted market price. A market price will reflect a statement if and only if the statement is material and is made publicly on an efficient market. So absent materiality, the market price cannot be presumed to reflect the statement in question, and the claimant's Why is that the case? I would suppose if there's no materiality, that means that the effect on the market price just happens to be zero. That's exactly correct. And the point here is Why isn't that common to all parties? Mr. Chief Justice, every one of the four predicates to the fraud on the market theory, which is a shortcut that excuses plaintiffs from proving that I heard the Every one of those predicates is common. Whether the market is efficient is common. Whether the statement is public is common. Whether the stocks were bought and sold during the period of market distortion is common, and materiality is common. The question is not whether Is the falsity of the statement common as well? The falsity of the statement is common, but it is not a predicate to whether or not you can prove reliance on a statement indirectly by relying on the integrity of the market price, because in an efficient market, material public statements, whether they are true or false, will presumably move the market price. And if you're trying to prove reliance on a false An individual who it has been deemed in a cert certification that an issue is immaterial could a individual claimant ever prove its material? Sure. I'm not On a truth on the market, truth in the market defense, which is the type of defense that you're raising here. Yes. Either way, let me explain why. There is no doubt that this Court's standard for materiality announced in TSC v. Northway and since reiterated is an objective standard. It doesn't depend on who the relier was. But the inability to prove to a certifying judge that class-wide reliance can be, that class-wide reliance exists because the statement was material doesn't preclude a plaintiff like Connecticut Retirement, which has said it's going to proceed whether there's a class or not, or any other member of the class from coming to court and saying either I directly relied on this statement and here's my proof that it's material to the trier of fact, because the decision that the judge makes at certification is not binding on the trier of fact, or even to say I relied on the integrity of the market price and I have proof that the market price was affected because here are three investors, they're all reasonable people, and they say that it was important to them in the total mix of information. I'm sorry. Mr. Waxman, that's just to say that a plaintiff can always re-litigate the question of materiality. But at the class certification stage, isn't it correct that if the Court holds that a statement is immaterial, it's immaterial for all members of the class and the suit has to be dismissed? Isn't that right? The suit cannot – that is, the suit cannot proceed as a class action. Connecticut retirement or anything. Kagan. It can't proceed as an anything action, can it? I mean, the remedy, if you thought that the statement was immaterial, is not to say I won't approve a class. It would be to say the suit has no merit. I think that's wrong. I think that's conceptually wrong, Justice Kagan, in the sense that all that the class certification decision says is that the putative class representative can sue on his own behalf, but he can't drag everybody else into it. Would you mean to say that a judge who has just ruled that a statement is immaterial is going to keep the case in his court litigated by an individual plaintiff, even though he's just ruled that the statement is immaterial? Well, I want to – I'd like to come back to the question of why, whether even if your – the premise of your question is correct, it doesn't matter for this case. But let me take one more run at your premise. The next thing that would happen, if I'm right, presumably, and the case isn't over, the class just isn't certified, is the defendant, you know, emboldened by the judge's rule, will file a motion for summary judgment on the grounds that materiality, the element of the substantive offense, not materiality, the predicate to class certification, has just been determined in favor of me. That is a very different question for the Court. Materiality, as this Court has said, is fact-sensitive, and it involves a balancing of credibility of witnesses or of expert opinions. And the judge at the class search stage has to find facts and has to make a ruling. When it comes up on summary judgment, what the – if there is a dispute of material facts, what the judge should do under the law is to say, look, I just held that. I didn't think it was material, but I resolved disputed material facts, and that's for the jury. And this case will go to the jury. Kagan. But you're saying that a judge on the class certification stage can say this is immaterial, the statement is immaterial, therefore, this can't proceed as a class action. But when a summary judgment motion comes in arguing the exact same thing, the judge would say, oh, it's not immaterial after all, or it's disputed enough that the case can continue? Well, in some cases, if the alleged fact is, you know, that Amgen's president got a haircut at 10.30, the judge presumably can say, there are, you know, this is immaterial as a matter of law. But the vast majority of cases, this is a perfect example, where they have statements that in the abstract, extracted from the total mix of information, look pretty material. These are flagship drugs. On the other hand, the evidence we wanted to introduce and the judge wouldn't hear because in the Ninth Circuit the test is not proving facts, but simply alleging them. I guess the question, Mr. Waxman, is if it's not immaterial as a matter of law at the summary judgment stage, how could a judge possibly say it is material at the class certification stage? Waxman, The judge at the class certification stage is required to weigh competing evidence and render his or her best judgment. At the summary judgment stage, a judge is precluded from doing that. Kagan So the class certification stage becomes kind of a supermerits inquiry? Waxman No, not at all. Kagan So the plaintiff has to surmount a higher burden on the merits? Waxman No, no, no. The class certification stage requires the moving party, the putative, the class representative who is proposing to arrogate to himself and his method of proof the fortunes of all the absent class members, whether they are direct reliers or indirect reliers, tie their fortunes to his fortune at trial. And the judge simply has to say, is this a case in which reliance is a common issue? That is the key through the certification gauge in 10b-5-2. Ginsburg I thought we were talking about, Mr. Waxman, the materiality of the alleged misstatement, and I am really not pleased by your answer that if the judge says it's immaterial, that doesn't end it for everybody. Certainly it should end it for the class, you said that, should it also end it for the representative of the class and say, okay, now I'm going to come back and this statement, this finding of immateriality doesn't bind me. Of course it's going to bind the class representative. So if it's immaterial, the case ends. And if it is material, then it is material to everybody in the class. Waxman Well, Justice Ginsburg, let's take an easier case. Let's say I'm somebody who bought Amgen during the relevant period, and they loot the judge says, you know, I've heard your or I've considered your event studies and I think that this information isn't material. There's nothing whatsoever that precludes me from bringing a suit and saying here's my evidence of materiality, I directly relied, here's my evidence of materiality. Kennedy Are you saying that there's a difference between materiality for the fraud on the market theory and for direct reliance, or that there can be a difference? Waxman In other words, fraud on the market is a materiality question addressed at the certification stage, but if the class isn't certified, the investor can still show that he had direct reliance that was reasonable. Am I right about that? Waxman You are either right or wrong, depending on how I understood you. Let me start with you're right, Justice Kennedy, you're absolutely right. Materiality, the quirk of this case is that materiality is both, as all my friends on the other side agree, an essential predicate of the fraud on the market theory. That is, the essential predicate of the ability to prove indirect reliance on the statement through an assertion that the market price, that the statement distorted the market price. Everyone agrees that if the statement isn't material, it didn't distort the market price, and therefore, reliance is an individualized issue for those who actually heard and detrimentally relied on the statement. One of the elements that has to be proven in a 10b-5 case is reliance, which is what we're talking about at the class cert stage, and their materiality is a predicate for reliance. But even if reliance is proven, materiality is also an element of a 10b-5b cause of action, and the standard for materiality is the same. The real question in this case is what is the purpose of Rule 23? If you think that the purpose of Rule 23 is to postpone to the merits everything that can be postponed without a risk of foreclosing valid individual claims, we lose. But that's not the purpose. The purpose is for a court to determine whether all of the preconditions for forcing everyone into a class action are present before you certify. Breyer, you could take exactly what you said and phrase it the opposite way. You could say, I know you wouldn't, but I suspect your opponents might, that is it the purpose of the certification stage to try out every element of liability at that stage rather than waiting for the trial? No, it's not good. Once you say that, what you said is, you know, it still could be material for some individual even though there's no market reliance. And similarly, a sort of silence going, some odd set of words or whatever it is, although it's not false for almost anybody, for some particular person, it could convey something false in some particular set of circumstances. So let's try out falsity at the certification stage, too. In fact, let's try out everything, because we can always think of a few examples where, despite the fact that, you know, that it's only a common issue, 99 percent of the time we can dream up a situation where it's not a common issue. Justice Breyer, the point of class certification is not to pretry the merits of the case. No, but you're saying what's at cert, class certification here, if there's no materiality, there is no class. And you're repeatedly faced with the question, you're absolutely right, in fact, there's no case. And so then what you say is, and indeed, I have a few instances here in which there could be a case. And I'd say, I bet if we're, you know, professorial enough, we could dream up a hypothetical for anything where there still is a case. That's it. Waxman, The point of class certification, as this Court explained in Amchem and other cases, and as the Rules Advisory Committee notes, is the question of whether there is class coherence in the first place. It's not the merits issue. It's whether it's fair for the class representative to impose on the defendant the juggernaut of class action and on the absent class members their fortunes in his or her hands.   Kagan. Kagan. Kagan. And that's what we said in Wal-Mart recently, that the question is a question of coherence. It's a question of whether the class wins or loses together. And here, for materiality, the class wins or loses together. If it's material, it's material as to everybody. If it's not material, it's not material as to everybody. And that's just the function of the fact that materiality, as we've repeatedly said, is an objective test. It doesn't have anything to do with whether a particular person finds it material. And where that's the case, it seems to me that the Wal-Mart test, which is, is an issue central to the, you know, when you rule on the issue, do you rule on each of the claims in one stroke? The answer to that is yes. Justice Kagan, this Court has explained more than once, and I'm now quoting from Amchem, that class, it is class cohesion and only class cohesion that legitimizes representative action in the first place. And that question, quote, preexists any settlement and therefore a fortiori any litigation. Ms. Freshman, I was saying that's right. There is class cohesion as to materiality. People win or lose on materiality together. There is class, with respect, there is class cohesion. Investors cohere into a class only when the alleged misinformation was significant enough to affect the price, thus enabling the common claim of relying on the misinformation in the same way. Letting a putative representative through the certification gate without showing that key is like on a theory of no harm, no foul, because we'll all lose together. It's like letting proof justify. Ginsburg. There's no question about 23A, right? The 23A prerequisites have been satisfied. Not challenged in this case. So the only thing is B-3, that is, a question of law or fact common to the class of members predominates over questions affecting only individual members. The question that predominates is the question of were these representations material? If they were material, then their certification is proper. If they were immaterial, it's not. It's just, I don't understand why this isn't just a clear case of a question common to the class, that is, the question of materiality. The answer, Justice Ginsburg, is that the question at the class certification stage, the predominance question, is the reliance element, not the materiality element. Everyone agrees that materiality, like falsity, like scienter, like loss causation, are all common questions. As this Court explained in basic and reiterated last term in Halliburton, in 10b-5 actions, the question at class certification is whether reliance needs to be proven directly, that is, individually by people who heard and acted in response, or whether the shortcut that this Court authorized in basic of allowing indirect proof by proving that the statement caused a distortion of the market is the way to go. There are two tracks. And it happens in this case that materiality is both an element, which is common, and a predicate to class-wide reliance. Everyone agrees that there you can't rely as a class on the challenged misstatement unless the statement moved or had the capability of moving the market price, and that's why materiality is the glue that you have. Scalia, Mr. Waxman, you have a habit of not pausing between sentences. You pause in the middle of a sentence, and you end a sentence and go right on to the next. So I apologize for interrupting, but you leave me no alternative. It's the red light. Yes, I understand. Materiality. Is it not the case that one of the other elements necessary for the fraud on the market theory would also be decided conclusively for future individual litigants, namely the efficiency of the market? A future litigant will ordinarily claim, I either sold it at a depressed price or bought it at an inflated price, because of the market's reaction to this particular fraudulent statement. Yes. So you can say the same thing about the efficiency of the market being determined in this preliminary question as you can say about the issue here. That's absolutely right, and the same is true for public statement. The way that the government in response to the question, I'm sorry. Because the difference is that if there's an inefficient market, the case goes forward and people have to prove individual reliance, and that means that the class splits apart and you don't get a coherent class. So the function of your winning an argument, either on publicity or on the efficient market, is that the class becomes incoherent, that everybody then has to prove individual reliance. But that's not what happens when you prove immateriality. When you prove immateriality, the whole class falls together because it's immaterial for everybody. That's not correct, and in any event, that analysis, that approach is, as I was trying to say, is like letting the fruits justify the search. The question is, at the time that class certification is sought, the question is, do common issues predominate? And the question in a securities case is, is reliance in fact, to quote this Court's opinion, in fact a common issue? You also have to show that in fact it's a common issue. You have to show that the market reacted to the statement, whether it was true or false, whether it was made with scienter or not, whether there was loss causation or not. The market had to react, and to do that, you need all three legs of a stool. The statement has to be material, because immaterial statements don't move markets. It has to be material. Ginsburg. Mr. Waxman, the basic opinion that started all this off on page 242 lists materiality as a common question, the materiality of the misrepresentation, if any. It's listed as a common question, and that makes perfect sense to me. It makes perfect sense to me as well, Justice Ginsburg, and I'm not being sarcastic. Materiality is a common question, just as are many of the other elements of a 10b-5 action. So at certification, you just assume that materiality, you don't have to show it. If it's always a common question, you assume it. And trying to weigh out the number of whether or not common issues predominate or not. Well, the question, Justice — I mean, if it were for class certification, that would be fine. The question is what the purported class representative has to show to get through the certification gate, to transform an ordinary bilateral dispute about, you made a false statement, I relied on it, it caused me to lose money, into something entirely different, a class of tens or hundreds of thousands of people, all of whom are proceeding together, all of their fortunes are married, and the defendant is faced with the full class, what you have to show. And you have to show that reliance is a common issue. Regardless of what you have to show down the road. Ginsburg. You seem to be setting up two determinations of materiality. You say in order to certify the class, you have to show that the misrepresentation was material. And in order to win on the merits, you certainly have to show that the misrepresentation was material. How do those two findings of materiality differ? How does the finding that you say must be made at the certification stage differ from the finding that must be made at the trial? Waxman. They differ temporally, they differ functionally, and they differ in terms of who decides it and with what level of finality. They differ temporally because the first question is, is this case going to proceed — which of two tracks is this case going to proceed? Is it going to proceed as a direct reliance case, I heard the statement and I relied on it, or is it going to proceed on a theory on behalf of everybody that whether the people who relied on it, the people who heard it and who didn't hear it, on a theory that the — we rely on the integrity of the market and the integrity of the market was impaired if the statement was false. In any event, there was a price effect, and there isn't a price effect if the statement wasn't material and made publicly into an efficient market. But what does material mean at the trial level? What does material mean at the certification? Waxman, Material means at both, as this Court said, that there is a substantial likelihood that the information would have been viewed by a reasonable investor as having significantly altered the total mix of information available. That is the test. Ginsburg So with the same question, it has to be, if it's established at the certification stage, it has to be established again at trial? Waxman That's correct. Just like the market efficiency and the public statement and the market timing, every one of those predicates has to be proven to the jury's satisfaction at trial. All of them are exactly the same in that respect. May I reserve the balance of my time? Roberts Yes, you may. Mr. Frederick. Frederick Thank you, Mr. Chief Justice, and may it please the Court. The class certification process determines whether the case can generate common answers for all class members. So for three reasons, rule 2. Sotomayor To answer the question that was asked earlier, if Basic set forth a presumption that all of its presumptions can be rebutted as well, not just efficiency, why do we set out efficiency as the one issue that can be rebutted? Frederick There's a lot to be said about Basic, and let me just start the ball rolling   about Basic. First, Basic did not try to distinguish between the requisites of Rule 23 and the substantive component of the fraud on the market theory. And that's important, because in that case, the Court remanded for a redetermination of materiality, but it upheld the class certification order. So in the context of Basic, the Court seemed to be thinking there was a difference between what needed to be proved for class certification and what would need to be proved on the merits of the case. Now, the second thing to be said is that Basic needs to be read against the backdrop of Rule 23, and especially this Court's recent decision in Wal-Mart v. Dukes. Because materiality always generates a common answer for all class members, it is the to be noncohesive for purposes of understanding predominance. Kennedy Doesn't that assume that the efficient market theory is always relevant to materiality? And there might be instances in which there is subjective reliance, which we inquire into, that is objectively reasonable, but that does not involve fraud in the market. Frederick Only in a hypothetical case, Justice Kennedy, and this is the absolute most important point that I can try to make today, in a fraud on the market case, the idea of reliance, the only theory of reliance that is being advanced, is indirect reliance on the integrity of the market. There is no other theory of reliance. Why do we know that in this case? For two reasons. First, the Connecticut retirement system could not be the class representative if it did not meet the typicality requirement of Rule 23a, which the district court found, this is on page 25a of the petition appendix, and has not been challenged subsequently. But why doesn't Connecticut have a direct reliance theory? We know they don't because they have a fiduciary duty to their investors to apply whatever theory they have of securities fraud. So we know in this case, and this is by far clear in the run-of-the-mind fraud on the market case, that the class representative will only establish reliance indirectly by showing that the integrity of the market was impaired. And so their construct is an entirely hypothetical and theoretical one. It simply does not arise in the real world of fraud on the market cases. Scalia. Mr. Frederick, you say that, you know, it's a fluky hypothetical where the issue here would come up again in a different context in an individual suit. Let me give you a case that's not fluky and hypothetical. That is, it is usually the case that people who are allegedly in the market are allegedly defrauded in stocks rely upon the fact that they bought it at an inflated price or sold it at a depressed price. Both of those questions depend upon the efficiency of the market. If the market is not efficient, a question that has to be decided for the class certification stage. That's why I got cheated, because the market reflected this false statement and I paid more money for the stock than I should have. That is not a fluky hypothetical. That is what will happen in most individual cases. And yet, that question of the efficiency of the market has to be decided at the class certification stage. Right. Precisely because we have to know are all the investors standing in the same position. If the market is efficient and it is absorbing information into the price, all investors will have the same question with respect to materiality. Scalia, You can say the same about materiality. If it's immaterial, it isn't reflected in the market. Frederick, They all lose on the merits if there is no materiality. The question about efficiency, Justice Scalia, and the reason why it is advanced at class certification is because it serves a gatekeeping role in determining whether all the investors can show indirect reliance on the market. If the stock is thinly traded, there are no public analysts, there are no stock reports given about it, and no one knows exactly why is the price being determined, that creates exactly the kind of individual issues that would predominate. Scalia, So the difference you assert is that with respect to the issue here, it will be an issue in all individual cases. Whereas, with regard to the efficiency of the market, it will only be an issue in what, 95 percent of the individual cases? Frederick, No. The question is, does efficiency serve as a means of determining are all the investors similarly situated? Are they a cohesive class? If the market is not efficient, and mind you, they conceded this question in their answer and they did not challenge the expert that was put in the district court on the question of efficiency. So that question is really not in this case. But in the case that you are hypothesizing, Justice Scalia, efficiency serves the gatekeeping function of determining are all the investors similarly situated so that indirect reliance can be a method of showing that predicate for a common answer to be determined at trial. Publicity serves the same function. Sotomayor, But we get a hypothetical that I actually think could occur, which is, not a truth on the market defense, but a known truth to the individual person seeking certification. So that is, it's immaterial to that person because they were told this information by someone and still traded. Would that defense be available at certification? Frederick, I think where it gets appropriately done is the adequacy and typicality prongs of Rule 23a, because that person has a different factual basis for attempting to assert a securities fraud, and that person is not typical of the class, and so therefore would not meet the typicality requirement of 23a. Now, it is possible, certainly, that in other cases there might be investors out there who do have a direct reliance theory, but they are protected by Rule 23 in a couple of ways. One is they can bring their own case and they can say, I directly relied on Amgen's misstatements and the false things that they said about their flagship products, and I therefore have my own 10b-5 case. Or if the class is certified and they think they have a direct reliance theory, they can opt out of the class. Breyer, this is true, but I'm trying to work out what, as I understand it now, Mr. Breyer, why do we use an efficient market theory? We use it because if the market is efficient and the statement is public, then someone who bought over the market is buying in a world that reflects the false statement. I mean, that's so he was, there was sufficient reliance indirectly. So I think his point is, yes, I concede materiality is something that's relevant to everybody, of course it is, a common issue in the case, but also it is a feature of materiality that if it wasn't material, then our theory of market reliance, market, efficient markets goes out the window, because you can have all the efficiency in the world, all the publicity in the world, but still where something to a reasonable stockbroker is irrelevant, his reaction is who cares. And therefore, although there could be special cases, their efficient market theory plays no role. Now, I think that's what his theory is, if I understand it. And I don't hope it is, if I got it right, I hope I got it right. But if that's so, what's your direct answer to that? Frederick, my direct answer to that is that materiality still serves as a common answer. All the investors are going to lose if it is not a material misstatement that has any effect, and they will win or they will have the potential to win if it is a material misstatement. Scalia, well, the issue is not whether it's a common question or not. The issue is whether there's any reason to believe that the market reflects reality. Frederick, that's the issue. Frederick, I think that the issue that you want to decide or you think that you want to decide is what constitutes the efficiency of the market. And that is a hotly litigated issue in many securities cases. It just happens not to be at issue in this one. And so the question of, you know, you've got a Fortune 200 company with 1.1 billion shares outstanding, 9 million traded a day during the class period. I mean, this is a hugely efficient market for the stock that is at issue before you. Breyer, so you're saying in this kind of case, the materiality or not is not likely to be specially sufficient, especially significant. In fact, you are going to decide it is a common issue, and there's no reason to import that common issue into the preliminary finding, even if what I just parodied, we hope, is true. Frederick, right. What you're ending up doing, Justice Breyer, is you are front-loading. You are having a mini-trial on the merits, because the materiality question here goes into what did the executives think and mean when they were making certain statements about clinical trials for their drug. What was the question? Kennedy, you are saying that if everyone loses, if it's not material, that's a common issue, and therefore the trial court at the certification stage does not have to determine it. No. What I'm saying is that it is, because it is a common question, it is not one to be decided at class certification. Just like false impeachments are. Kennedy, I'm not sure how that's different from what I said. But in other words, you're saying that market efficiency is just presumed and everybody wins or everybody loses, and so you can have a class action, even though the trial judge is convinced that there is no adequate common market theory to support the common entry. That's not our position. Our position is that efficiency and publicity are gatekeeping functions to determine whether or not the answer for indirect reliance on the market is a common question. Ginsburg, Mr. Frederick, you say you point out quite rightly that the efficiency of the market was conceded, was conceded below. Yes. It was not challenged, except that now in Amgen's brief, there is a suggestion that the efficiency of the market is a more sophisticated question. It's not binary, I think, is what they said. It isn't that it's either efficient or it's not efficient. It depends on other factors. It's a new concoction. They have not argued before this stage of the briefing in this case. And it's wrong because all investors will rise or fall based on whether or not those that have a subsidiary materiality effect are going to be able to show that there was some consequence to the market. And that is why it is still a common question, even if there are the subsidiary efficiencies. So if I've got this, your answer, which I'm trying to follow, and don't tell me I'm right if I'm not, that with efficiency of the market, that's not a traditional element of the tort. Correct. That's something special to get into this theory. That's correct. Publicity of the matter, that's not traditionally a common element of the tort. That's something special to get into this theory. Correct. With materiality, it is a common element of the tort always. It is traditionally there. It will be litigated, so there's no special reason to or desirability in or need for litigating at the outset. That's correct. And Congress recognized that there were issues concerning these various elements, and that's why, in 1995, when it enacted the PSLRA, it addressed Sainter by imposing a heightened pleading requirement and loss causation, but it was asked to address materiality and reliance, and it chose not to. The first bill that was proposed would have dealt with BASIC, and the Congress voted that down. But there is a reason for deciding it earlier, and the reason is the enormous pressure to settle once the class is certified. In most cases, that's the end of the lawsuit. There's automatically a settlement. Now, one way of certifying the class is to show, well, you know, it's an efficient market, and you can presume that everybody in the class relied on the market. But that's only true if the statement was material to the market. If it was immaterial to the market, that isn't true. And you should not proceed any further, and you should not begin this class action, which in most cases is simply the preliminary to a settlement. There is a good reason for deciding it sooner. Well, Justice Scalia, you would consign district court judges to having many trials on the merits because the fact that materiality is such a highly contextual inquiry. Well, you have the burden of justifying class certification. Is that not correct? That's correct. All right. Now, I suppose there's some real question, whether or not the causal chain hasn't been broken, the causal chain between the misstatement and the movement in price. Don't you have to prove the integrity of the causal chain? Yes. At the certification stage. Yes. But that's where efficiency comes in, Justice Kennedy. And that's why when efficiency is contested at the class certification stage, what comes in are proofs of, does information end up having an effect? And economists do event studies that try to show the general level at which information will be absorbed into the market price. That's where that issue gets contested. It does not get contested on the question of materiality, because materiality looks at the total mix of information that would be relevant to an investor. Do you say it's material even though there's no cause in fact? I don't understand that. What I'm saying is that the efficiency question goes into the individual stock's ability to absorb information, both material and nonmaterial information. Now, the question on the merits for which all investors will either rise or fall together is, was this company's misrepresentation a material one to the reasonable investor? And that's why all investors are going to have the same answer, because it's the same objective inquiry. The question that you and Justice Scalia are positing about the efficiency of the market is one on which there are disagreements among the lower courts as to how to challenge and how to deal with that question, but they do not do it on the basis of materiality. Judge Easterbrook had a very sound opinion in the Schleicher case in which he goes through and he explains that when there is a fraud on the market case, the notion of indirect reliance where efficiency is established really devolves down to the core merits question of materiality. And that is a common question in which all of the investors are going to rise together. But I do want to end by saying that when Congress looked at this question, it decided not to deal with this question of efficiency or materiality. It was faced with a specter of 300 lawsuits being filed per year that were securities fraud cases in 1995, where a 93 percent settlement rate was occurring, an average settlement of nearly $9 million. In 2011, the statistics showed that what Congress did was successful in achieving the purpose Congress attained. In the year 2011, there were 188 class actions filed. Fifty percent of them were dismissed, mostly on the heightened pleading standard that Congress had enacted in the PSLRA. So it's not really for this Court's province to be imposing policy judgments about what additional requirements ought to be put on 23b-3. Congress made that judgment. And these proceedings that have gone along in this way were perfectly sound by both the district court and the court of appeals. If the Court has no further questions. Roberts Thank you, counsel. Ms. Sherry. Ms. Sherry Mr. Chief Justice, and may it please the Court, I'd like to start by going back to the language of Rule 23, and in particular the predominance requirement. The only question is whether common issues predominate over individual issues. As several of the Justices have recognized, materiality is an objective inquiry that leads to a common answer, and that common answer unites the class rather than divides it. If materiality is shown, the class members can proceed together on the fraud-on-the-market theory. Sotomayor But as Justice Scalia pointed out earlier, so is efficiency or non-efficiency. So that differentiation, articulating it that way, doesn't move the ball. Ms. Sherry I would disagree with that, because the difference is with efficiency and with publicity. If the — depending on the common answer, the class may divide, it may fragment, because even if the market is inefficient, individual class members can make out claims of direct reliance. You can rely on an inefficient market and prevail. You can rely on non-efficient statements. Scalia What's the difference between 100 percent and 95 percent? I mean, most of these other claims in stock cases are going to be based on what the market price was when the person bought or sold. So, you know, 95 percent instead of 100 percent. That's the basic difference? Ms. Sherry The purpose of the class certification states with respect to predominance is to weigh the common issues against individual issues. And with respect to market efficiency, excuse me, market efficiency and publicity, those are two matters that either bind the class together or divide them. To the extent the market is inefficient or to the extent the statements are not public, they are not all getting the information. Breyer They are preconditions. They are preconditions not related to the merits that do, in fact, justify the use of a special reliance theory. Now, said that, of course, so is materiality. But materiality, unlike the other two, is part of the element of the basic case where it is a common issue in this case and in most to everybody. Ms. Sherry And that's exactly right. And the difference is in the case of the class certification. Breyer Is that exactly right? Because I'm going to be facing the problem a few minutes from now. Somebody is going to say, well, why is that exactly right? I mean, it is a precondition. Ms. Sherry I'm going to say it's exactly right, because the confusion here is that materiality in a fraud on the market case serves two purposes. It is a predicate to the fraud on the market theory, but it's also an independent, separate element. And what Petitioners would have this Court do is isolate the two inquiries when they are really the same question. It's asking the same question, it leads to the same answer, and it's one that unites the class. There's the Petitioners phrase the question as whether it binds. Scalia If they aren't the same question, then maybe we shouldn't have this fraud on the market theory. Because the whole purpose of it is to assume that the whole class was damaged and relied, because you can rely on an efficient market. But you can only rely on an efficient market where there has been a material misrepresentation. So maybe we should overrule basic, because it is certainly based upon a theory that simply collapses once you remove the materiality element. The fraud on the market theory, however, is a substantive theory. It's not a procedural doctrine. To be sure, one of the practical consequences is it allows classes to be certified. But it's a means of proving reliance in an impersonal market in which investors trade today. What the Court did in basic was adapt the direct reliance concept which envisioned face-to-face transactions to the impersonal market. And so with respect to actually proving a fraud on the market, you're absolutely right. But what we're talking about here is not whether a fraud on the market can be proven. We're talking about whether common issues predominate over individual issues. And Petitioner still failed to point to any individual issue that would come into play in a case where materiality is not able to be shown. None would, because materiality would kill the case for all. Scalia. Materiality is a common issue. Reliance is only a common issue if you accept the fraud on the market theory. That's the problem. And you are using the one which is a common issue to leapfrog into the second, to make the efficiency of the market reasoning something that it isn't. With all due respect, the two really do collapse into one. Once you've proven that the market is efficient, and once you've proven that the statements are public, you're asking the same question. You can call it reliance or you can call it materiality. Well, of course, that imparts the question of 24 years of economic scholarship — I think that's how long it's been since BASIC was decided — has showed that the efficient market theory is really an overgeneralization. It could be much more subtle than that. And so you have an event theory. But you want us to ignore that. No. A couple of responses to that. The first one is the one that my colleague made, which is that market efficiency isn't disputed here. It was conceded in the answer at paragraph 199. And not only is it not contested here, Petitioners actually embrace an efficient market in order to pursue their truth on the market defense. And so my first response would be that's not something to be addressed in this case. My second response is BASIC didn't adopt any particular economic model of market efficiency. If you look at footnote 24 of BASIC, if you look at footnote 28 of BASIC, the Court makes very clear that it's not adopting an economic theory as far as how quickly or completely the information is incorporated into the market price. Instead, it was looking at congressional intent. It was looking at difficulties in direct proof. And it was looking at common sense to reach a result and, again, to adapt a reliance theory that was premised on face-to-face transactions to the impersonal market that exists today. And so, again, I wouldn't consider market efficiency in this case is not presented to the extent there's questions about how the determination should be made in terms of levels of generality. That's something that the lower courts can decide. Today, all we're talking about is the materiality component. And, again, focusing on whether or not common issues predominate over individual issues. It's a comparative inquiry. It requires comparing common issues on the one hand and individual issues on the other. And Petitioners have not identified any individual issues that will actually come into play as the case is litigated. Going to some of the policy concerns that were raised, I'd make a couple points. One is the one that my colleague made. Congress addressed those policy concerns in the PSLRA, in SLUSA, and it chose to address them through different means. The second point I would make is the same argument could be made with respect to the other elements of the securities fraud cause of action. If the argument is you should have to prove it at class certification because otherwise the case is going to settle, you could say the same thing with respect to scienter, with respect to falsity, with respect to loss causation, which this Court in Erika John, of course, said did not have to be proven at the class certification stage. So, in short, it proves too much. The third response to that is there are countervailing policy concerns, and there are countervailing concerns that are actually tethered to Rule 23 in terms of efficiency. Excuse me, Petitioners. Roberts. Do you agree that you have to show materiality to rely on the fraud on the market theory to establish reliance? As a substantive matter, on the merits, yes. It is a predicate. I don't understand why that is. If you're trying to show reliance and you show that it's an efficient market and that the information was public, doesn't that show reliance without regard to whether the statement's material or not? I think in terms of transaction causation, what you're — and reliance is referred to as transaction causation. What you're trying to show is whether or not the information affected or distorted the market price. And in order to show price distortion, it does require that the information be material. And so we accept that in terms of the fraud in the market theory. Or to put it differently, an efficient market is a market that takes account of material factors, right? I would say that the — It's not an efficient market if it's, you know, if it's, who knows, random. It takes account of material factors. I would make a minor quibble on that. I would say that the market takes account of all public information, but it's only — it only moves based on material information. So that's exactly right. And so our issue is not with the predicates for the fraud on the market theory. Our issue is with Petitioners equating the predicates on the fraud on the market theory with the actual prerequisites of Rule 23. And this Court made it very clear in Shady Grove that the only question at the Rule 23 stage is whether the prerequisites have been met. The only one that we're talking about here is predominance. It's a comparative inquiry between common issues and individual issues. And if I can quickly go back to my point about countervailing policy concerns, as Petitioners acknowledge, a determination at the class certification stage is not binding on anybody, in that case on the ultimate fact finder or in any other case. And so the problem with Petitioners' position is that it would require relitigation of the materiality question at the merit stage to the extent a class is certified, or if it's not, in every other case that's brought on the same issue. That doesn't serve the efficiency purposes that underlie Rule 23. In terms of absent class members, he suggests that absent class members would somehow be prejudiced, but as Your Honor, Justice Kagan pointed out, the only prejudice is that they wouldn't be able to relitigate the very same issue. That is protected by allowing opt-out, that's protected by Rule 23's adequacy of representation requirement, and so that's already sufficiently protected. The most efficient course is to actually focus on common issues. Materiality is a common issue. It will result in the same answer for all, the class rises or falls together. And class certification is not about only certifying meritorious cases. In 1966, when the current version of Rule 23b3 was adopted, it was an innovation. It was a change from the spurious class actions, where it was a one-way ratchet where only the defendant was bound. In the current version of Rule 23b3, you want to certify class actions that are both meritorious and those that are not so it reaches a binding judgment. Thank you, counsel. Mr. Waxman, you have 5 minutes. Thank you, Mr. Chief Justice. The advisory committee notes to the very amendment that Ms. Sherry was referring to states, quote, ''A fraud case may be unsuited for treatment as a class action if there was a material variation in the kinds or degrees of reliance by the persons to whom they were addressed.'' That is this case. The anomaly of our my friend's position is they concede that materiality is a predicate for class reliance. They agree that unless the statement is material, however efficient the market, however loudly the statement was published, there is no detrimental reliance on the integrity of the market price. Reliance can only be approved, and, Justice Breyer, this goes to your traditional paradigm case. In the paradigm case, reliance was proven by the fact that you heard the statement and you did something in reliance on it to your detriment. The innovation of BASIC, and the notion that BASIC didn't say anything about class certification under Rule 23, is astonishing, given the fact that the whole reason that the question of the fraud on the market theory was presented was the inquiry about whether there could be, whether the traditional bilateral method of proving detrimental reliance on a statement could be aggregated into a ginormous class by allowing everyone to say, well, we relied on the integrity of the market price, and a material misstate, a material statement affected that price. They said it would have been. Breyer, how did that work? How did it work traditionally? No class, okay? Farmer Jones comes in. You have to show it's false. You have to show it's material. And then you show the reliance that he did something on that basis. So the materiality was not part of reliance. Materiality was an element that was always proved. And then you went on to show reliance. Exactly right. And what the Court in BASIC could have said, Justice Breyer, was forget the fraud on the market theory. We're going to say that for 10b-5 actions, you don't have to prove reliance directly on the statement. We're going to allow you to — we posit that investors rely in common on the integrity of the market price, and if you can demonstrate to us that a challenge statement moved the market, if there was market effect, we will allow you to proceed as a class. Because then the common answer to the common question, how are you going to prove reliance, is we're going to prove it all the same way, because investors rely on the integrity of the market price. Now, the Court in BASIC — It sounds like you're saying you have to win on the merits of the materiality question in order to get the class certified. You have to prove that the Court explained correctly in BASIC, and this actually goes to — anticipates my next point, Justice Ginsburg. The Court in BASIC didn't say, well, we're going to allow you to — we're going to allow you to — You don't have to prove it to get the class certified. You only have to prove it to get the class certified with the benefit of the fraud on the market theory. Correct. Which is a shortcut to getting the class certified, right? So this is just a condition to the shortcut. Yes. And in fact, it's a shortcut to a shortcut. What the Court in BASIC could have said is, if you want to proceed as a class, you prove to the court that reliance is common by showing that the market, the statement affected the market price. But the Court in BASIC went further in the direction of class plaintiffs and said, you don't have to prove that directly. All you have to prove, we will allow that to be presumed if you can demonstrate without effective rebuttal four things. The statement was of a type that the market would care about. The statement was made publicly in an efficient market, and the trading occurred during the period between the misstatement and the correction. And the reason that we want to prove it up front in the 23, rather than wait until the merits, where it will be argued anyway in exactly the same way, the reason that we want to do it first is, since it's going to be there anyway and going to be litigated anyway, unlike publicity, unlike efficiency, but the reason we take this one and run it up front is, and it can't be the answer we should litigate everything before we litigate anything. Of course. No. Okay. So what's the answer? The answer is that this is not — that the point of Rule 23 is to say, you get to use this very useful and powerful device if you have the key to the gate. And the key to the gate is showing that the answer to the question, will reliance be proven commonly, not lost commonly, but proven commonly, is, in fact, yes. Thank you. Roberts. Thank you, counsel. The case is submitted.